CHARLES SCHNITZER, Doing Business under the Firm Name and Style of LEROY SHIRT Co., Respondent, *v.* CARL LANG and Another, Doing Business under the Trade Name and Style of LANG & HOFFMAN, Appellants.

First Department, January 11, 1924.

Sales — action to recover for breach of alleged express warranty that colors in silk sold to plaintiff were fast — warranty was not in written contract — verdict that warranty was made is against evidence — objection to silk was not made until eight months after goods were delivered — plaintiff did not give notice within reasonable time after he ought to have known of alleged breach — Personal Property Law, § 130, bars recovery.

In an action to recover for the breach of an alleged express warranty that the colors in silk sold to the plaintiff were fast, the existence of the warranty which was not in the written contract of sale is not shown where the testimony by the plaintiff that the warranty was made is opposed by evidence on behalf of the defendants that a warranty was not given and by evidence of a custom of the trade in existence at the time of the sale to the effect that the trade did not guarantee any materials for color and that those engaged in dyeing cloth would not guarantee the fastness of the colors.

However, if a warranty had been given by the defendants, the plaintiff is not entitled to recover, since by not notifying the defendants of the alleged breach until eight months after the last delivery, he did not comply with section 130 of the Personal Property Law, which provides that a recovery cannot be had for a breach of warranty where, after the goods are accepted, the buyer fails to give notice to the seller within a reasonable time after he ought to have known of the breach.

APPEAL by the defendants, Carl Lang and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 16th day

First Department, January, 1924.                    [Vol. 207

of March, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the 19th day of March, 1923, denying the defendants' motion for a new trial made upon the minutes.

*Samuel Fleischman*, for the appellants.

*Bondy & Schloss* [*Eugene L. Bondy* of counsel; *I. Russell Stein* with him on the brief], for the respondent.

MERRELL, J.:

The plaintiff, Charles Schnitzer, was a manufacturer of shirts, doing business under the name and style of LeRoy Shirt Co. The defendants were copartners engaged in the manufacture of piece silks, of broad silks, as they were known. On or about June 11, 1919, the plaintiff entered into a contract with the defendants for the sale and delivery to him by defendants of seventy-eight pieces of a specified quality of silk to be used by the plaintiff in the manufacture of shirts. The contract was in writing, consisting of plaintiff's order and confirmation in writing by the defendants. The contract price was one dollar and sixty cents per yard. Delivery of the goods was to commence as soon as possible in the following month of July, 1919, and under the terms of the contract delivery was to be completed by November first following. The evidence disclosed that, of the seventy-eight pieces embraced in the order, sixty-one pieces were delivered on or before October 31, 1919, and thereafter the balance of the order was filled by the defendants on or before January 29, 1920. In all eighty-three pieces were furnished and accepted and paid for by plaintiff, and all of said eighty-three pieces, except eight pieces, were delivered by the defendants to the plaintiff on or before December 17, 1919. At the time of the making of the contract for the sale and delivery of said silk, there was an active demand for such fabrics, and the price, following the making of the contract, advanced rapidly and was still advancing at the time the defendants completed deliveries. However, in the month of May, 1920, there was a sharp decline in prices of silks of the quality contracted for, and the market therefor became badly demoralized. None of these silks sold and delivered by the defendants to the plaintiff were used in the manufacture of shirts until sometime in the summer of 1920. The plaintiff in his complaint alleges, and upon the trial offered proof to show, that the defendants guaranteed the colors of said silks embraced in plaintiff's order to be fast, and that said colors would not fade. No such warranty was contained in the written order of the plaintiff nor in the confirmation thereof by the defendants. It was claimed, however, in plaintiff's complaint that said silks were sold upon a guaranty by the defendants that they would be of fast colors and would not

fade, and upon the trial the plaintiff offered proof tending to establish such contention on his part. Under defendants' objection and exception the plaintiff testified that he purchased the silks in question through defendants' traveling representative and salesman by the name of Ring; and that at the time Ring solicited plaintiff's order, he displayed a sample of the shirtings which the plaintiff tested by washing, and found the colors of said sample to be fast; and that Ring assured him that the colors of the silks which the defendants would furnish under said contract were perfectly fast, and that the goods were suitable for shirts. In support of plaintiff's claim that the goods embraced in the contract were sold upon an express warranty, the plaintiff swore his assistant buyer and sales' manager, one Frankel, who testified that he was present at the time Ring solicited plaintiff's order, and that said order was given from a sample " swatch " produced by Ring, which sample was washed and found all right. The evidence disclosed that, following the delivery of the several pieces of silk under said contract, the plaintiff made no attempt to test the same or to ascertain whether the colorings used in dyeing the silks were fast, prior to the summer of 1920, when some of the silk was cut up and sample shirts made by the plaintiff for use of his salesmen upon the road. The plaintiff testified that after some of the shirts had been manufactured of the silks embraced in the order, through being displayed as samples by his traveling salesmen, they became soiled and were sold to boys and employees of his establishment; and that when they were washed the colors faded; and that upon investigation and testing he found that none of the colorings used by the defendants in said silks were fast; and that said silks were of much less value than they would have been had they been of fast colors and as represented by the defendants. After taking samples of each piece, the plaintiff disposed of said silks at a loss and brought the present action to recover the difference in value of the silks if as represented by the defendants and as they actually were with the faulty dyeing. In his complaint the plaintiff alleged that, by reason of defendants' breach of warranty of said goods, he had suffered damages in the sum of $7,023.40, for which he demanded judgment against the defendants. Upon the trial the jury rendered a verdict in plaintiff's favor and against the defendants for $3,228.80 damages.

The plaintiff made no claim that the goods were not up to the alleged warranty thereof until August 27, 1920, upon which date the plaintiff wrote the defendants complaining that the goods were not of fast color as represented by the defendants, but were " absolutely unstable," and that said fabrics under ordinary washing completely faded out, and demanded of defendants that they

receive back said merchandise and return to the plaintiff the amount which he had paid them therefor. Plaintiff's letter to defendants of August 27, 1920, was the first intimation that the defendants received that plaintiff was dissatisfied with the goods that defendants had furnished under said contract.

The defendants upon the trial denied positively that there was any guaranty or representation as to the fastness of the dyes or colorings used in said silks embraced in the contract. Indeed, the defendants' salesman Ring testified that, when plaintiff asked whether the defendants would guarantee the colorings to be fast, he, Ring, told them that the defendants did not guarantee the goods delivered against " running." In addition to this the defendant Lang testified that at that time there was a general custom in the trade not to guarantee any materials for color, and that no silk manufacturers guaranteed their colors during the several years following the outbreak of the World War, and that no guaranty was ever given during those years by silk manufacturers that the colors would not fade. Lang testified that the making of dyes in this country was then a new industry, and that we had as yet been unable to manufacture dyes that were fast and would not fade. The defendants, in support of their contention that there was no guaranty as to the colors of the silks being fast, swore several silk dyers, all of whom testified that, at the time when this contract was made, no manufacturer in this country guaranteed the stability of colorings of silks, and that it was not customary in the trade to guarantee colors. Several witnesses extensively engaged in the dyeing of silks, testified that there was a general custom in the trade at that time not to guarantee the colorings in piece or broad silks, one witness testifying that he was the solicitor of dyeing for the United Piece Dye Works, the largest concern engaged in the business in the United States; and that it was not the custom of the trade at that time to guarantee the colors of silk goods; and that it was then the general custom among dyers to do dyeing with no guaranty attached as to the fastness of the colors; and that said custom was well known in the trade. No testimony was offered on the part of the plaintiff to contradict the testimony offered by the defendants as to such custom, and in view of such testimony we would be forced to hold that the verdict of the jury determinative of the sharp question of fact between the plaintiff and the defendants, as to whether such guaranty was made, was clearly against the weight of the evidence. We think that the vast preponderance of the evidence indicates that no such guaranty of colors as was claimed by the plaintiff and his witnesses was ever made by the defendants. Our conviction in this regard is also

sustained by the fact that there is no guaranty of colors to be found in the written contract between the parties.

However, even assuming that there was a warranty by the defendants that the colors of the silks embraced in the contract were fast, we think the plaintiff is not entitled to recover damages for the breach of such warranty. Section 130 of the Personal Property Law (as added by Laws of 1911, chap. 571), known as the Sales of Goods Act, provides as follows: "Acceptance does not bar action for damages. In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But, if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, *or ought to know, of such breach,* the seller shall not be liable therefor." (Italics are the writer's.)

In our opinion the holding of the goods by the plaintiff for nearly a year, without any attempt to test the colorings or quality of said goods or to discover whether said colors were fast and as plaintiff claimed they were warranted and represented by the defendants, clearly precludes any action on the part of the plaintiff for damages for such breach. It would have been a very simple matter for the plaintiff to have tested the goods delivered by the defendants under said contract, and to have ascertained whether or not the colors were fast; but instead of doing that, the plaintiff kept the goods until the demand for said goods fell off and there was a sharp decline in the market price thereof, when for the first time he notified the defendants that the goods were not up to warranty. We do not think that the notice of the alleged defect given by the plaintiff to the defendants was within a reasonable time after the plaintiff should have known that the goods were not up to the alleged warranty. (*Ficklen Tobacco Co.* v. *Friedberg,* 196 App. Div. 409; *Henderson Tire & Rubber Co.* v. *Wilson & Son,* 235 N. Y. 489; *Niehoff-Schultze Grocer Co.* v. *Gross,* 205 App. Div. 67; affd., 237 N. Y. 509; *Matthes* v. *Benn,* 191 App. Div. 557.)

The judgment and order appealed from should be reversed, with costs, and plaintiff's complaint dismissed, with costs.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.